### GARDNER and others *v.* HERZ and another.

*(Circuit Court, S. D. New York.  June 27, 1882.)*

PATENTS FOR INVENTIONS—REISSUE—WANT OF NOVELTY.

    Where the form of a chair seat was old, the material used old, and the method of imparting the form to the material was old, the reissue was devoid of any patentable novelty.

*Gifford & Gifford,* for complainants.

*Foster, Wentworth & Foster,* for defendants.

WALLACE, C. J.  This action is brought to restrain the infringement of reissued letters patent No. 9,094, dated February 24, 1880, granted to the assignees of George Gardner for an improvement in chair seats.  The reissue contains two claims, of which the second only need be stated, which is: "A chair seat made of laminæ of wood glued together, with the grains in one layer crossing those of the next, concave on the upper surface, convex on the lower surface, and perforated, as a new article of manufacture, substantially as set forth."

The original patent was granted to Gardner May 21, 1872, and contained but a single claim, as follows: "As a new article of manufacture, a chair seat constructed of veneers of wood, with the grain running crosswise of each other and glued together, all substantially as set forth, and for the purpose specified." This patent has been twice reissued, the first reissue bearing date July 4, 1876. The first reissue has been before this court upon a motion for a preliminary injunction founded upon it, and it was decided by Judge Blatchford upon that occasion that none of the claims of that reissue were

valid except the sixth, which was not in controversy, and therefore was not considered. The second claim of that reissue was as follows: "As a new article of manufacture, a bottom for a seat frame constructed of two or more veneers or thin layers of wood, with the grain of one layer crossing that of the other, said layers being secured together by an adhesive substance, and having perforations formed therein for the purpose of ventilation or ornamentation, substantially as set forth." On that occasion Judge Blatchford held that the claim of the original patent was anticipated by a patent granted to John K. Mayo, one of the present defendants, December 26, 1865, and reissued to him and two others, August 18, 1868, in eight divisions. This patent was for an improvement in the manufacture of the material, which consisted in cementing together a number of scales or veneers of wood with the grain of the successive pieces running crosswise or diversely, so as to form a firm material adapted for the construction of various articles, including chairs and settees. In Division E of the reissue the specification states: "In the chair, figure 2, the bottom, B, may be formed of flexible material made up by the union of two or more thin layers of wood having the grain crossed or diversified in direction and united by suitable cement." The specification also states that "by adopting the well-known process of wet and dry heating in the course of manufacture the several scales of wood may be brought to such a state of pliability as to assume any desired form by compression in a matrix or upon formers." Upon the occasion referred to Judge Blatchford likewise held that there was no patentable novelty in the second claim of the first reissue of Gardner's patent, in view of the patents prior to Gardner's—one to Tice and one to Cochrane—for perforated chair seats of metal or gutta percha. It follows, therefore, that the only question not heretofore decided by this court and now open, relating to the present reissue, is whether the concavity of form which is an element of the new claim in this reissue will support the patent.

Chair bottoms made of board, and softened by steam and pressed to a concave shape, in a mould, so that the form of the seat will conform to the shape of the person who may occupy it, are shown in the letters patent issued to Z. B. Bellows, bearing date March 15, 1859. So, also, the concave or dishing form of chair seats had been adopted long before Gardner's patent in ordinary chair seats. In the specification of the present reissue the inventor states that he does not lay any claim to the veneers crossing each other and glued together, as these have been used for various purposes, and have become

public property, and that he does not claim the pressing of a chair seat in the concave form by dies.

If there was no patentable novelty in using the perforations of the metal or gutta-percha chair seats in the veneer 'seats, by Gardner, neither can there seem to be any in employing a well-known form of chair seat in his veneer seat. As it had been pointed out by Mayo that the material used is pliable, and can be pressed into any desired form, and as the reissue disclaims the pressing of a chair seat in a concave form, and as chair seats had been so formed, it is difficult to see how there was any invention in Gardner's chair seat. Gardner merely applied a process that was old to a material that was old to obtain an old form. Considered as a combination it is hardly possible to believe that the perforations or the concavity performed any new functions in the Gardner seat. An ingenious theory has been presented, to the effect that the perforations and concavity co-operate in Gardner's seat to prevent warping and curling of the material used. If this is true, the same elements were combined in the Bailey chair back, and performed there the same functions they performed in the Gardner seat. It may be that the Gardner seat is mechanically a better seat than any which preceded it, but his improvement is not a patentable one.

It is strenuously insisted that the popularity and success achieved by the Gardner seat beyond those of his predecessors affords cogent evidence both of the utility and patentable novelty of his invention. The answer to this argument is that the success of his seat is probably due to a feature which is not suggested in the original patent; that is, its adaptability for use by unskilled workmen. His seats as now made can be fitted without mechanical skill to a bottomless chair, and are largely used to repair chairs in which the original seats have been worn out, and can be so used without any special skill. They are also largely sold to chair manufacturers, because they can be easily adapted to chairs of different sizes and seats of different forms. But the chair seat described in Gardner's original patent and shown in the drawings did not practically possess this characteristic of adaptability, but was a frame seat which could only be fitted to a chair by a skilled laborer. Such a chair seat would fail to meet the peculiar want which the present chair seat supplies. Considered as a new article of manufacture, if the complainants' chair seat has no frame, and its novelty and utility consist in its adaptability to be sold separate from the frame and to be readily ap-

plied by any person to any chair, then the reissue is for a different invention than that disclosed in the original patent.

In conclusion, in view of the former decision of this court the complainants can only succeed upon the theory that by imparting a concave form to his chair seat he has imparted sufficient patentable novelty to his article to sustain a patent; and this when such a form of chair seat was old, the material used old, and the method of imparting the form to the material was old. This theory cannot stand.

The bill must be dismissed.